Curia, per Frost, J.
The Bank, being the holder of a note indorsed by the defendant, who resided in the country, about nine or ten miles from the city, deposited a notice of non-payment, directed to the defendant at Charleston, in the city post office, which was the nearest to the defendant, and that from which he usually received his letters. . The question is, was this notice sufficient 1 The general rule is, that where the parties reside in the same city or town, notice of the dishonor of bills and notes must be personal, or by leaving it at the dwelling house or place of business of the party, if absent; but if the party reside at a different place, then notice may be sent through the post office, to.the post office nearest to him, or to which he usually resorts for his letters and papers; Reid vs. Payne, 16 Johns. R. 218; Bank of Columbia vs. Lawrence, 1 Pet. 578 ; Story on Bills, § 295 — 7; Chit, on Bills, 473, (ed. 1842) ; and not only may notice be sent by mail, but that mode of conveying it is most safe and proper ; for if it be unnecessarily forwarded by a private hand, or unusual conveyance, and it miscarry or be delayed a day beyond the time it would have been conveyed by mail, the party giving the notice may thereby lose his remedies. Darbishire vs. Parker, 6 East, 3. Cases may happen where notice by a special messenger may be *340 proper. There is not, and cannot well be, any general rale which determines when the employment of a special messenger is necessary. On this subject, Chitty (on Bills, 487,) lays it down that “ if there be no post for a considerable time after a party receives notice, it may then be incumbent on him to forward notice to his immediate indorser by the most ordinary conveyance, or even by a special messenger — as in some parts of Yorkshire, where the manufacturers reside at a distance from the post town, and the letters might, if not so forwarded, lie a long time before they are called for ; in which case it may be necessary to send a special messenger, the expense of which would be recoverable.” For this, the case of Pearson vs. Crallan, 2 Smith’s Rep. 404, is cited. That was assumpsit on a bill of exchange for £30, indorsed by defendant to plaintifE. The plaintiff demanded the expense of a messenger. The defendant tendered the amount of the bill and interest, and contended that the holder of the bill was not entitled to give notice by a special messenger, but only by the ordinary course of the post.
The tender having been pleaded, the defendant claimed a non-suit. But the motion was refused, and it was left to the jury to say whether the messenger was employed wantonly or not. It appearing that the defendant lived out of the ordinary course of the post, the notice might not have been received for a fortnight; the jury found the amount of the expenses. Lawrence, J. said, “in some parts of Yorkshire, where the manufacturers live at a distance from the post towns, the letters may lie for a long time before they are called for, and it may be necessary to send notice by a special messenger.” Lord El-lenborough said that “ it was rightly left to the jury to say whether the special messenger was necessary, and also, whether the charge was reasonable.” The case only decides that the holder may recover the expense of a special messenger, if that charge be not wantonly incurred, of which the jury must judge ; and the dictum respecting the Yorkshire manufacturers only suggests that notice to them by a special messenger, under the circumstances supposed, may be necessary. The case furnishes no authority for the alternative of the employment of some or *341 dinary conveyance. On the passage from Chitty, and the case cited in support of it, Thompson, J. in the case of the Bank of Columbia vs. Lawrence, 1 Pet. Rep. 584, remarks, “ in that case, the court did not say that it was necessary to send a special messenger, and it was left to the jury to decide whether it was done wantonly or not. The holder is not bound to use the mail for the purpose of sending notice. He may employ a special messenger if he pleases, but no case has been found where the English courts have directly decided that he must. To compel the holder to incur such expense would be unreasonable, and the policy of adopting a rule that will throw such an increased charge upon commercial paper on the party bound to pay, is, at least, very questionable.” It may be added, that in the case of Pearson vs. Crallan, it is not stated what was the distance of the defendant’s residence from the regular course of the mail, nor that the plaintiff knew of the post office which the defendant used, so that he might have sent the notice by mail. The points on wrhich the decision of the present case depends, are, therefore, left open.
On this subject of due diligence, the American are to be preferred to the English authorities, even if any could be found in point. The rules of commercial diligence are derived from general acquiescence in the course of business which has been found convenient. From such acquiescence arises a custom, and that, when it receives judicial sanction, becomes a rule. In giving effect to the decisions of foreign courts, a vigilant attention should be directed to the circumstances that may indicate a common necessity or application. A diversity of habits, situation, pursuits and course of business, may suggest a material modification, in order to the beneficial transfer of them into our jurisprudence.
The circuit decision maintains, that notice by mail is insufficient, where the parties reside in the same district. Though not affirmed, it may be inferred, that in such case notice must be sent by a special messenger. If the mode of transmission, uniting in the greatest degree expedition and safety, that is known to the use of the country, *342 be not sufficient, it is a reasonable conclusion, that the notice should not bo entrusted to the negligence and risk of a casual bearer. Very many cases, on an examination of the facts, will show that personal notice is not necessary, even within the limits of a town, (or township,) which is a subdivision of a district or county, generally of very limited extent. In Ransom vs. Mack, 2 Hill N. Y. R. 589, it was ruled that whether mail service is good or not, does not depend on the inquiry whether the person to be charged lives in the same legal district, but whether the notice may be transmitted by mail from one post office to another where the drawer or indorser usually receives his letters. In the case of the Bank of Columbia vs. Lawrence, it is said that it is distance alone, and the usual course of receiving letters, which must determine the question ; and that the residence of the defendant being in a county different from that to which the notice was directed, could not affect the question. Reid vs. Payne. If notice by mail is good within the limits of a town, it cannot be insufficient within a district. In all the districts of the State, there are several, if not many, post offices. These are the ordinary means of conveying communications on business ; a different mode of giving information cannot reasonably be required, in cases of bills and notes, from that used in ordinary business transactions.
“ The cases have not defined the the precise distance from a post office at which a party must reside, to render service of notice in that way good.” 3 Kent Com. 107. In the case of the Bank of Columbia vs. Lawrence, 1 Pet. 583, Thompson, J. says, “it has not been thought advisable, nor is it believed it would comport with practical convenience, to fix any precise distance from a post office, within which the party must reside, in order to make this a good service of notice.” In that case, the defendant lived two or three miles from Georgetown, and generally received his letters from the post office in that town. The note was payable in Washington — and it was ruled that the sending a notice to the Georgetown office was sufficient. The notice in the case of Reid vs. Payne was sent by mail from Albany to Greenbush, which was five *343 miles-distant from the defendant’s residence; and it was heldt o be sufficient, on proof that that office was more convenient for the defendant (though there were two others in the county, of which one was nearer to the defendant’s residence,) and that the defendant had often received letters there, but generally on information given him by the post master, without which previous information it appeared that the defendant had never called for them. In the case of the Bank of the United States vs. Carneal, 2 Pet. R. 543, notice of non-payment of a note payable in Cincinnati, was deposited in the post office of that city, directed to the defendant, “ Campbell county, Kentucky.” There were two post offices in Cámpbell county, distant two and three miles from the defendant’s residence. Cincinnati was two miles distant. The defendant was in- the habit of receiving letters directed to him at Cincinnati, at the office in that place, and had directed the post master to keep them till called for. He visited Cincinnati very frequently, being a Director of a bank in that town. There was no proof .that the letter had been mailed for Newport, the county town of Campbell county, nor to Covington, the other post office in Campbell county, nor that it was received from the office in Cincinnati. Yet it was held, the service of notice was sufficient, on the presumption that it had been taken by the defendant from the office in Cincinnati. The defendant relies on the cases of Ireland vs. Kip, 10 Johns. R. 490, and Ransom vs. Mack, 2 Hill N. Y. R. 589. In the first, notice of non-payment was deposited in the post office of New York, directed to the defendant at Kip’s Bay. This was three and a half miles distant from the city post office, and within the corporate limits of the city, though beyond the compactly built parts. Two notaries testified that it was their custom to deliver notices as far as Kip’s Bay. The notary of the bank admitted that he served such notices as far as the three mile stone. It was very briefly decided, that the notice was not sufficient, and nothing is said to shew it was not decided on the proof of the custom. ■ In the second case, notice for the defendant was deposited in the Sackett’s Harbor post office, directed *344 to North Adams, which was three miles and a half distant from the defendant’s residence, and from which he did not receive his letters and papers. But it was held sufficient, because the holder had used due diligence to find the address of the defendant, by enquiring of one of the parties to the note, and directing the notice as he was instructed to do. On the authority of these cases, the sufficiency of the notice in the present case may be supported.
On the question of due diligence, the use of a post office is more material than its distance from the party. It does not appear how frequently the defendant came to Charleston, whether once a week, or more or less frequently. What business he had carried him to that place, and so far as it was conducted by correspondence, his letters were received there. All that the law requires, is the use of due diligence to ascertain the address of the party, and if the notice to him be regularly mailed, it is immaterial whether it reach him or not. Kuth vs. Weston, 3 Esp. 54; Stanton vs. Blossom, 14 Mass. R. 116; Lincoln and Kennebeck Bank vs. Hammatt, 9 Mass. R. 159. If the defendant’s business called him to the city daily, or frequently, the service would have been clearly sufficient. The use of due diligence cannot be made to depend on the frequency of a party’s call at the post office. That cannot be known to the holder of negotiable paper, on which he may be liable. The holder will have done all that can reasonably be required of him, when notice is sent to the only post office which the party uses for the purpose of receiving letters.
Then, as to the distance of the defendant’s residence from the post office, which in this case was nine or ten miles — that concerns his convenience rather than his liability. If of several offices the most distant were selected, because more convenient to the party’s business, or more frequently visited, that would be the proper office to which tosend a notice. Distance could not, in such case, be averred against use, to make the notice insufficient. A party’s own choice must determine where notices shall be sent to him. If the defendant had resided within one or two miles of the city, and the proof of his use of the city post office was the *345 same as in the present case, it would be within all the authorities cited. The distance of the party from his usual and only office, cannot affect the question of .due diligence by the holder, in mailing a notice for him to that -office.
The defendant takes an exception to the cases cited, because the notice in this case was not transmitted by mail, but was deposited in the post office, and cites a dictum in Ransom vs. Mack, that “the post office is not a legal place of deposit for notices to parties to negotiable paper, but that service in that mode is sufficient, where notice may be conveyed by mail.” The dictum is diréctly against the position it is cited to maintain. The first part of the authority cited, must be understood to affirm that the post office is not a legal place of deposit for parties'resident in the same city or town with the holder; but the dictum expressly affirms that it is a legal - place of deposit, in cases where it may be conveyed by mail — that is, for parties not resident in the same city or town with the holder. If the holder of the note were in New York or Columbia, it cannot ’be questioned that notice mailed to Charleston would be sufficient. So, if a post office within the same distance from the defendant’s residence as that in Charleston, were used by the defendant, a. notice mailed to that office would be-sufficient. Why, then, should not a deposit of notice in the city post office, by a holder in the city, be sufficient.?
The motion' is granted.
Richardson, Butler and Wardlaw, JJ. concurred.